# **Exhibit A**

(Complaint)

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
--------------------------------------------------------X

Smith Hill Capital LLC,

               Plaintiff,

    -against-

Jack Dougherty, Marina Club Apartments, LLC, and Marina Walk, LLC,

              Defendants.

--------------------------------------------------------X

Index No.

**SUMMONS**

    **YOU ARE HEREBY SUMMONED** and required to serve upon plaintiffs' attorneys an answer to the complaint in this action within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

    This action will be heard in the Supreme Court of the State of New York in and for the County of New York. The basis of the venue designated is General Obligations Law § 5-1402 and CPLR §§ 501 and 503.

Dated: New York, New York
        January 30, 2026

                                   **LOEB & LOEB LLP**

                                   By:  */s/ Bethany D. Simmons*
                                        Bethany D. Simmons (bsimmons@loeb.com)
                                        Alex Inman (ainman@loeb.com)
                                        345 Park Avenue
                                        New York, NY 10154
                                        Telephone: 212.407.4000

                                        *Attorneys for Plaintiff Smith Hill Capital LLC*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------X

Smith Hill Capital LLC,

           Plaintiff,

        -against-

Jack Dougherty, Marina Club Apartments, LLC, and Marina Walk, LLC,

           Defendants.

------------------------------------------------------------X

Index No.

**VERIFIED COMPLAINT**

Plaintiff Smith Hill Capital LLC ("SHC" or "Plaintiff"), by and through its attorneys, Loeb & Loeb LLP, for its Verified Complaint herein against Defendants Jack Dougherty, Marina Club Apartments, LLC, and Marina Walk, LLC alleges as follows:

## NATURE OF ACTION

1. Plaintiff brings this action for breach of contract, unjust enrichment, and declaratory judgment against Defendants based on their breach of the certain binding terms of a term sheet dated July 18, 2025 (the "Term Sheet") and their retention of benefits obtained during the course of negotiations between the parties. Under the provisions of the Term Sheet, the parties set forth the major points of understanding under which one or more affiliates of Plaintiff (the "Investor") would make a preferred equity investment in real property holdings in Florida currently owned, directly or indirectly, by Defendants (the "Investment"). Plaintiff invested its time, energy and money for a period of more than seven months since execution of the Term Sheet towards trying to close the Investment. However, on or about January 12, 2026, Defendants informed Plaintiff that they were no longer willing to move forward with the Investment as provided in the Term Sheet. As a result, Defendants were obligated to pay a "breakup fee" to Plaintiff, to reimburse

Plaintiff for costs and expenses incurred in connection with the Term Sheet and negotiating the Investment Documents (defined below). Defendants are also obligated to indemnify and hold Plaintiff harmless for any fees or costs it incurs relating to broker fees that may be due and owing in connection with the Term Sheet and Investment. However, Defendants have failed and refused to pay either the Breakup Fee or Outstanding Expenses Balance (both terms as defined below), despite acknowledging their obligation to do so.

## PARTIES

2. Plaintiff SHC is a Delaware limited liability company with its principal place of business in New York. Plaintiff is a real estate debt investment management business that provides, among other things, mortgage loans, mezzanine loans, and preferred equity investments in real estate opportunities.

3. Upon information and belief, Defendant Jack Dougherty ("Dougherty") is a natural person residing in St. Petersburg, Florida

4. Upon information and belief, Defendant Marina Club Apartments, LLC ("Marina Club") is a Delaware limited liability company with its principal place of business in Florida.

5. Upon information and belief, Defendant Marina Walk, LLC ("Marina Walk" and, together with "Marina Club," the "Property Owners") is a Delaware limited liability company with its principal place of business in Florida.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to General Obligations Law § 5-1402, as the Term Sheet states that Plaintiff may bring suit as against Dougherty "in any Federal or State court in the City of New York, County of New York," and that he "hereby irrevocably submits to the jurisdiction of any such court[.]" The Court further has jurisdiction

pursuant to CPLR § 302, as Plaintiff is a New York company, the Term Sheet and all related documents were executed in New York, and Defendants' breaches and failures have harmed Plaintiff in New York.

7. Venue is proper in this Court pursuant to General Obligations Law § 5-1402 and CPLR § 501, as the Term Sheet states that Plaintiff may bring suit "in any Federal or State court in the City of New York, County of New York," and Dougherty agreed to "waive any objections which [he] may now hereafter have based on venue and/or forum non conveniens of any such suit, action or proceeding[.]" Venue is also proper in this Court pursuant to CPLR § 503.

## FACTUAL ALLEGATIONS

**I. The Term Sheet**

8. On or about July 18, 2025, the Parties executed the Term Sheet.

9. The Term Sheet outlined the main points of understanding pursuant to which the Investor would make a preferred equity investment relating to two properties in St. Petersburg, Florida: Marina Club Apartments (owned by Defendant Marina Club) and Marina Walk Apartments (owned by Defendant Marina Walk). In connection with Investor's investment, the parties planned to establish a new Delaware LLC to own 100% of the direct equity interests in the owner of each Property (the "Owner").

10. Plaintiff targeted its capital to cause Investor to make a preferred equity investment pursuant to the terms of "Investment Documents" that would be negotiated consistent with the provisions in the Term Sheet.

11. Defendant Dougherty, defined as the "Sponsor" and the "Guarantor" in the Term Sheet, would own 80% of the common equity in the Owner and would control the Owner, subject

to Investor's rights (including, without limitation, to approve certain major decisions) as set forth in the Investment Documents that the parties were negotiating.

12. While many of the provisions in the Term Sheet were nonbinding and subject to definitive documentation, certain paragraphs are binding and survive termination of the Term Sheet, including the paragraphs entitled "Costs and Expenses," "Deposit," "Broker" (which obligates Defendants to indemnify Plaintiff for any costs or fees related to the Broker, as defined in the Term Sheet and below), "Breakup Fee," "Prevailing Party Legal Fees," and "Miscellaneous" (setting forth choice of law and venue provisions).

13. Pursuant to the provisions of the Term Sheet, Dougherty was responsible for the payment of all of Plaintiff's expenses in connection with the Investment. The Term Sheet Provides:

> Whether or not the Investment closes, Sponsor and Guarantor, jointly and severally, shall (i) be responsible for the payment of all expenses of Investor as well as its affiliates and participants in the Investment including, but not limited to closing expenses, the cost of title insurance (including, without limitation, UCC insurance and fee title owner's policy), surveys, transfer and recording fees, and the fees and expenses of counsel to the Investor, and (ii) promptly reimburse Investor for any expenses related to the preparation of documents (and related due diligence and structuring) pertaining to the Investment, and all expenses incurred by Investor including, without limitation, travel, due diligence expenses, legal costs and expenses and the cost of any outside providers of due diligence reports and violation expediters (collectively, the "Expenses").

14. Dougherty, as Sponsor and Guarantor, was obligated to pay the Expenses irrespective of whether the Investment closed. These obligations are binding and survive termination of the Term Sheet.

15. The Term Sheet also contains a "Breakup Fee" provision. If the Investment did not close for any reason other than Plaintiff's election not to proceed with the Investment, then within

one (1) business day of Plaintiff's demand for payment, Dougherty was obligated to pay Plaintiff an amount equal to $752,500. The parties agreed that the Breakup Fee represents fair and reasonable compensation for Plaintiff, as its capital was targeted for the Investment and could not be deployed to invest in other projects. This obligation was also binding and survived the termination of the Term Sheet.

16. The Term Sheet required Dougherty to fund a $150,000 deposit (the "Deposit") to pay the Expenses, certain non-refundable fees, and, if applicable, the Breakup Fee. Dougherty agreed that the Deposit was not a "cap" on Expenses and that he would increase the Deposit in $50,000 increments upon Investor's request.

17. Under the Term Sheet, both Property Owners and Dougherty agreed, on a joint and several basis, to indemnify Investor and hold Investor harmless from and against any liability for any and all costs, fees, and expenses to Franklin Street (the "Broker") in connection with arranging the Investment to Defendants, including but not limited to any litigation involving the Broker and Plaintiff regarding the Investment. This obligation was binding and survived the termination of the Term Sheet.

18. The Term Sheet also provided that, in the event of any dispute regarding the Term Sheet, then the prevailing party in such dispute shall be entitled to recover from the non-prevailing party its attorneys' fees, disbursements and court costs incurred in connection with the dispute. This obligation was binding and survived the termination of the Term Sheet.

19. The Term Sheet contains an exclusivity provision under which Defendants were not permitted to contemplate competing investment offers while negotiating with Plaintiff.

II.     **The Parties' Negotiations Over the Investment Proceed Over Several Months.**

20. As originally drafted, exclusivity under the Term Sheet was set to terminate on October 13, 2025.

21. The parties subsequently executed two letter agreements extending the exclusivity provision. First, on September 18, 2025, the exclusivity period was extended to November 14, 2025. Second, on November 10, 2025, the exclusivity period was again extended to December 15, 2025.

22. During the exclusivity period, Dougherty periodically increased the Deposit on account of Expenses incurred by SHC and Investor to conduct diligence, resolve Property-level issues, and to negotiate and draft the Investment Documents.

23. Indeed, in the ordinary course of the due diligence process, Plaintiff identified items, issues and questions for the Property Owners to be aware of and to begin to resolve, including, without limitation, title, survey and zoning related issues and the Property Owners' organizational structure issues. This provided a direct benefit to the Property Owners and will allow them to close on an investment or other transaction other than the Investment on a more expedited basis.

24. As part of the negotiation process, Plaintiff introduced Defendants to a new senior lender for Marina Walk, which benefited Defendants because new senior financing was identified by the Parties as a critical step in the Transaction.

25. Plaintiff also obtained updated survey and title reports on Marina Walk and Marina Club, which also benefitted the Property Owners because they will not need to obtain an additional survey or title report in connection with an alternative transaction.

26. In addition, in connection with its work to close on the Investment, Plaintiff provided the Property Owners with draft preferred equity investment documents and other forms and templates that they can now use to close on a transaction with a different lender or capital provider.

### III. Defendants Admit that They Will Not Close on the Investment, but Fail to Pay the Breakup Fee or Outstanding Expenses Balance.

27. Subsequent to the second exclusivity extension, and despite Plaintiff's efforts to resolve all outstanding issues necessary for the Investment to close, Defendants were unwilling or unable to resolve all outstanding issues and to close on the Investment. On December 15, 2025, Plaintiff's principal sent another extension letter agreement to Defendants, informing them that the continued delay in the Investment was increasing Plaintiff's opportunity costs and noting that, if Defendants were no longer interested in the Investment, then Plaintiff would be entitled to the Breakup Fee plus its outstanding and unpaid Expenses as outlined in the Term Sheet. Dougherty responded by confirming that any amounts due under the Term Sheet would be "taken care of" if Defendants did not move forward with the Transaction, but failed to execute and return the further extension agreement.

28. Although the parties continued to discuss the Investment throughout December 2025 and January 2026, on or about January 12, 2026, Defendants informed Plaintiff that they would not move forward with the Investment.

29. Accordingly, on or about January 14, 2026, Plaintiff requested, by email, that Defendants honor the Term Sheet and reimburse Plaintiff for its Expenses that exceeded the current Deposit, then totaling $75,206.00 (the "Outstanding Expenses Balance") and pay the Breakup Fee totaling $752,500.00 by January 16, 2026.

30. On January 15, 2026, following a phone call between Plaintiff's principal and Dougherty wherein Dougherty proposed alternative terms for the Investment that were not acceptable to Plaintiff, Plaintiff sent another email to Dougherty requesting payment of the Breakup Fee and the Outstanding Expenses Balance, as required under the Term Sheet, by January 16, 2026.

31. Having received no written response to his January 14 and 15, 2026 emails, Plaintiff's principal emailed Dougherty again on January 16, 2026 asking that he honor his obligations under the Term Sheet and pay the Outstanding Expenses Balance and Breakup Fee as he confirmed he would in his December 15, 2025 email.

32. Nevertheless, Dougherty failed to pay the Outstanding Expenses Balance or Breakup by January 16, 2026 as required by the Term Sheet.

33. On January 20, 2026, counsel for Plaintiff sent a letter to Defendants demanding immediate payment of the Breakup Fee and the Outstanding Expenses Balance and provided wiring instructions for payment of the same. Notwithstanding the fact that the Term Sheet obligates Dougherty to make payment within one business day of a demand, Defendants failed to substantively respond or to make payment.

34. To date, neither Dougherty nor the Property Owners have paid either the Breakup Fee or the Outstanding Expenses Balance. Those obligations amount to not less than $827,706.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Breach of Contract as against Defendant Dougherty)**

35. Plaintiff repeats and realleges all the allegations in Paragraphs 1–34 as if fully set forth herein.

36. Plaintiff, Dougherty, Marina Walk, and Marina Club are parties to a valid and enforceable contract, the binding paragraphs of the Term Sheet, under which Dougherty agreed to reimburse Plaintiff for Expenses incurred in connection with the Investment, and to pay a Breakup Fee if the Investment failed to close.

37. Plaintiff complied with its agreement under the Term Sheet to attempt to negotiate definitive Investment Documents.

38. Dougherty breached the binding terms of the Term Sheet by failing to pay the Breakup Fee and the Outstanding Expenses Balance, despite Plaintiff's demand for payment.

39. As a direct and proximate cause of Dougherty's failure to fulfill his obligations under the Term Sheet to pay the Breakup Fee and Outstanding Expenses Balance, Plaintiff has been damaged in an amount to be determined at trial, but in an amount not less than $827,706.

40. Plaintiff is also entitled to recover its attorneys' fees and costs incurred in connection with this dispute.

## AS AND FOR A SECOND CAUSE OF ACTION
**(Unjust Enrichment as against Defendants Marina Walk and Marina Club)**

41. Plaintiff repeats and realleges all the allegations in Paragraphs 1–40 as if fully set forth herein.

42. During the course of the parties' negotiations, Plaintiff identified items, issues and questions for the Property Owners to be aware of and to begin to resolve. This included, without limitation, title, survey and zoning related issues, and organizational structure issues.

43. Plaintiff obtained updated survey and title reports on Marina Walk and Marina Club.

44. Plaintiffs introduced Defendants to a new proposed senior lender for Marina Walk.

45. Similarly, Plaintiff provided the Property Owners with draft preferred equity investment documents and other forms and templates in connection with the proposed Investment.

46. Defendants Marina Walk and Marina Club, as Property Owners, benefitted from these actions, as they will make it easier to close an alternative transaction. The Property Owners have a checklist of items that they know they will need to resolve to close on any transaction, they have an introduction to a senior lender, they will not need to obtain new survey or title reports, and

the draft investment documents and other forms they received from Plaintiff can be reused in closing an alternative transaction.

47. The Property Owners' enjoyment and use of these services come directly at Plaintiff's expense. This unjust enrichment has caused, and will continue to cause, monetary damages to Plaintiff in an amount to be determined at trial.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Declaratory Judgment as against all Defendants)**

48. Plaintiff repeats and realleges all the allegations in Paragraphs 1–47 as if fully set forth herein.

49. Plaintiff and Defendants were parties to a valid and enforceable agreement, the binding paragraphs of the Term Sheet.

50. Plaintiff complied with is agreement under the Term Sheet to attempt to negotiate definitive Investment Documents.

51. The Term Sheet obligated Defendants, jointly and severally, to indemnify and hold Plaintiff harmless "from and against any losses, costs, damages or expenses arising from any claim made by an individual or entity, including the Broker, against Investor for a finder's fee . . . or other payment arising out of the Investment or the Term Sheet." This includes, but is not limited to, any litigation involving Plaintiff and the Broker regarding the Term Sheet or the Investment.

52. As a result of Defendants' failure to close the Investment, Plaintiff may incur out-of-pocket costs to the Broker that are Defendants' responsibility, jointly and severally, pursuant to the Term Sheet.

53. Plaintiff is entitled to a judgment declaring that Defendants must indemnify and/or reimburse Plaintiff, hold Plaintiff harmless, and are otherwise responsible and liable for any and

all costs, fees, and expenses to the Broker in connection with Broker arranging the proposed Investment contemplated by the Term Sheet.

**WHEREFORE**, Plaintiff prays for relief as follows:

A. An award of damages in an amount to be determined at trial, but not less than $827,706, that Plaintiff has suffered as a result of Dougherty's breach of the binding provisions of the Term Sheet;

B. An award of damages in an amount to be determined at trial as a result of the Property Owners' unjust enrichment at Plaintiff's expense;

C. A judgment declaring that Defendants, jointly and severally, must indemnify and/or reimburse Plaintiff, hold Plaintiff harmless, and are otherwise responsible and liable for any and all costs, fees, and expenses to the Broker in connection with arranging the Investment to Defendants and in any litigation involving Plaintiff and the Broker regarding the Term Sheet or the Investment;

D. Prejudgment interest at the maximum legal rate;

E. Plaintiff's attorneys' fees and costs; and

F. Such other and further relief that this Court may deem just and proper.

Dated: New York, New York
January 30, 2026

                                    LOEB & LOEB LLP

                                    By:  */s/ Bethany D. Simmons*
                                        Bethany D. Simmons (bsimmons@loeb.com)
                                        Alex Inman (ainman@loeb.com)
                                        345 Park Avenue
                                        New York, NY  10154
                                        Telephone:  212.407.4000

                                        *Attorneys for Plaintiff Smith Hill Capital LLC*

## **VERIFICATION**

I, Brendan McCormick, am the Managing Principal of Smith Hill Capital LLC, the Plaintiff in this action. I have read the foregoing Verified Complaint and know the contents thereof.

I affirm this 30th day of January, 2026, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, except as to matters alleged on information and belief and as to those matters I believe it to be true, and I understand that this document may be filed in an action or proceeding in a court of law.

Dated: January 30, 2026

_____
BRENDAN MCCORMICK